UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  No. 1:17-cr-193-01

  v.                                Hon. Robert J. Jonker
                                     Chief U.S. District Judge

ALEX ALBERTO CASTRO,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Andrew Byerly Birge, United States Attorney for the Western District of Michigan, and Stephen P. Baker and Joel S. Fauson, Assistant United States Attorneys, respectfully submits the following memorandum concerning its sentencing position in this case.

Defendant Alex Alberto Castro is an exceptionally dangerous man. Castro distributed hundreds of kilograms of cocaine and heroin from California to Grand Rapids and other Midwestern locations over the course of several years. In that time, he recruited and directed multiple couriers for the delivery of the drugs and outsourced the collection of the millions of dollars in drug proceeds to an international money laundering conspiracy. Before his present crimes, Castro was convicted of federal RICO violations for smuggling drugs into prison in California as an admitted member of La Surenos (Ontario – Black Angels) street gang, through the gang's relationship with the Mexican Mafia prison gang. BOP intelligence indicates that Castro joined the Mexican Mafia, or La Eme, while incarcerated.

During his pretrial detention in the present case, Castro has been so non-compliant with his custody that he is now housed in his fourth facility. While at the Kalamazoo County Jail, Castro's jailers found several items of contraband in his cell: eight grams of crystal methamphetamine; toilet-distilled alcohol; and a shank, a make-shift knife crafted from a prohibited plastic spoon pilfered from the mess. Reports from other Kalamazoo inmates indicated that Castro solicited information about government cooperating witnesses and their families during his time in the jail, leveraging his ability to have methamphetamine delivered to west Michigan to curry needed commissary, drugs, and information about his codefendants from his fellow inmates.

Castro's criminal history indicates that he has made a life as a violent, drug criminal, with multiple prior previous convictions for violent crimes and the RICO offense, and several violations of his supervised release, probation and parole. In the case before the Court, Castro moved on to the large-scale distribution of heroin and cocaine, orchestrating the movement of hundreds of kilograms across the country to other wholesale distributors. Heroin and cocaine have wreaked havoc on our community and defendant profited from this crisis. Due to the seriousness of his offense and the degree of his criminal history, probation's report recommends Castro receive a life sentence. The government asks the Court for a serious sentence in accord with his crime and history.

## Background

Castro received his first adult criminal conviction from a state court at age 18. (R.710: Presentence Report ("PSR"); ¶ 165.) After that, Castro continued to violate the law throughout his life, whenever he was not in prison, culminating in his federal RICO conviction in 2010. (*Id.*; ¶¶ 167-173.) Following his release from the BOP in 2013, evidence presented at trial indicates that Castro began orchestrating the delivery of kilogram amounts of heroin and cocaine to Yusef Phillips and Ray Lee in Michigan, utilizing multiple methods and couriers, including Salvador Cervantes to accomplish this task. (*Id.*; ¶¶ 70-101.)

On October 23, 2018, a jury found Castro guilty of conspiring to distribute more than 1000 grams of heroin and more than 5 kilograms of cocaine. (R.618: Jury Verdict.) This Court has scheduled his sentencing for February 14, 2019, at 3 p.m.

## The Sentencing Guidelines

Based on the testimony from Castro's Grand Rapids' wholesale customers, Yusef Phillips and Ray Lee, and one of his cross-country couriers, Salvador Cervantes, all of whom testified that Castro sent hundreds of kilograms of heroin and cocaine to Grand Rapids beginning in 2014 and continuing until 2017, and the corroborating information in the wiretap evidence and the recovery of over 10 kilograms of cocaine and a kilogram of heroin on September 3, 2017, the PSR holds Castro responsible for: 199 kilograms of heroin; 404 kilograms of cocaine; and 90.72 kilograms of marijuana. (PSR; ¶ 128.) In the course of this activity, Castro recruited others to transport the drugs on his behalf including one codefendant—Salvador

Cervantes. (*Id.* ¶ 70.) Phillips also proffered that Castro arranged for his cousin to continue to send drugs to Michigan during the period when Castro was sent back to prison for violating his supervised release. Castro also counseled Phillips on how to handle his own money courier, Toranita Meridy, after she reported suspected police surveillance while delivering proceeds to Catro's money courier in Chicago. (Gov. Ex. 8.4.1738.) For his leadership role, recruiting and directing others and receiving a larger share of the profits in criminal activity that involved five or more people or which was otherwise extensive, the PSR assessed him an additional 4 offense levels pursuant to USSG § 3B1.1(a). (PSR; ¶ 156.)

Cervantes stated that Castro visited Cervantes's wife at their family home to let her know that Castro intended to "take care of" Cervantes following Cervantes's arrest on September 3, 2017. (*Id.* ¶ 150.) After the visit, but before Cervantes's plea, Cervantes's family moved out of fear to prevent Castro or his compatriots from knowing where they were. (*Id.*) During trial, the government disclosed that Cervantes was initially unwilling to testify due to his fear of Castro's reprisal. While in Kalamazoo County Jail, the government received reports from several inmates that Castro was soliciting information from other inmates about the whereabouts of Phillips and Lee's family members, and their mother received a letter advising her of this fact. (*Id.*) Additionally, Castro continued to obtain crystal methamphetamine, a shank, and manufacture alcohol while in custody pending trial. For his attempts at obstruction and disregard of rules while in custody pending trial, the PSR assessed him an additional 2 offense levels of obstruction of justice. (*Id.*; ¶ 157.) Castro also

4

received an additional 2 levels pursuant to USSG § 2D1.1(b)(16) for the combination of specific offense characteristics including his aggravating role, his witness intimidation and participation in this criminal conduct as a livelihood. (*Id*.; ¶ 154.)

For the massive amount of drugs attributed to Castro—199 kilograms of heroin; 404 kilograms of cocaine; and 90.72 kilograms of marijuana—the PSR assigned him 279,890.72 kg of marijuana equivalent, or more than 4 times the necessary amount to occupy the highest offense level assigned of 38. (*Id*.; ¶ 153.) Castro objects that the amount over counts as Phillips, Lee and Cervantes were inconsistent in their reporting. However, Castro's objection to the drug amount ignores Phillips's statements that Castro used multiple couriers, several separate from Cervantes. This was consistent with Cervantes's testimony that he took over a year off of delivering on Castro's behalf following the seizure of almost $400,000 in drug proceeds from his truck in 2015. Phillips and Lee testified that the drugs kept coming from Castro, even when he was in prison for his supervised release violation.

For all his criminal activity, the PSR assigns Castro a total offense level of 46. Pursuant to Chapter 5 of the USSG, Castro's offense level is lowered to 43 which is the highest offense level that can be assigned. (*Id*.; ¶ 161.) Castro's numerous prior criminal convictions and status on supervised release during the present activity give him a criminal history score of 19 points, far in excess of the 13 points needed to place Castro in the highest Criminal History Category of VI. (*Id*.; ¶ 178.) The resulting advisory guideline is life imprisonment. (*Id*.; ¶ 227.)

5

**Sentencing Factors**

A.  **Nature and Circumstances of the Offense**

Within a year of his release from federal prison for his RICO offense, Castro began distributing large amounts of cocaine and heroin to the Grand Rapids area. Defendant leveraged his prior criminal relationships to move up the distribution ladder, making his connection with Phillips through another connection he made in prison. Castro continued his distribution up until the time of his arrest in this case, including during his return to prison for a separate supervised release violation.

Drug trafficking and its related crimes stretch from the areas in which heroin and other drugs are produced to the streets on which the drugs are sold to the homes of drug addicts. In between their genesis and use, drugs pass through countless hands, with each intermediary taking their share of the profit as reward for their efforts and the risks associated with drug-trafficking.

Heroin distribution has been a scourge in our country and in Michigan. The Center for Disease Control reports that there were more than 15,000 heroin overdose deaths in the United States in 2017 and that heroin-related overdose deaths increased five-fold from 2010 to 2017. https://www.cdc.gov/drugoverdose/data/heroin.html.



https://www.drugabuse.gov/related-topics/trends-statistics/overdose-death-rates

Specifically, in Michigan, the CDC reports that 2,694 people died of drug overdoses in 2017, which is a 13.9% increase over the previous year. https://www.cdc.gov/drugoverdose/data/statedeaths.html.

In 2014, the Michigan Department of Community Health reported that drug overdose deaths tripled in Michigan between 1999 and 2012.



Unfortunately, the target of Castro's distribution, the community of Grand Rapids, has not escaped these results. The data from the Kent County Medical Examiner represents an even more dramatic increase in drug overdose deaths—more than 50% from 2016 to 2017—with the majority resulting from opioids.



Every gram of heroin that the defendant helped deliver to customers in Grand Rapids was connected to the web of violence and devastation created and maintained through drug trafficking and leading to the loss of life at all levels – from the addict who cannot provide for himself or his family due to his addiction, to the gang members fighting to protect their territory and their supplies, to the international distributors defendant corresponded with that send an endless stream of desperate people throughout this country to deliver their poison and collect their proceeds. A serious sentence is necessary to show that there are significant consequences for such crimes and to appropriately punish the defendant for his activity spreading massive amounts of poison into a community he would, outside of arrest and transportation to face these charges, never visit.

B.   **History and Characteristics of the Defendant**

As mentioned above, Castro has been involved with drug trafficking activity and violent criminal activity for much of his life. Additionally, the evidence in this case indicates that he recruited and incorporated others into his distribution of heroin and cocaine. Defendant's criminal background and activity merit a serious sentence.

C.   **Need to Afford Adequate Deterrence and Protect the Public from Further Crimes**

Defendant has a history of committing additional crimes while on supervised release, probation and parole. Prior sentences and supervision have not deterred him from committing additional offenses; they have just made him more circumspect about his own involvement in handling drugs. Indeed, his present charges have not deterred him from additional criminal activity while awaiting trial; smuggling drugs and weapons into his Kalamazoo jail cell. His recidivist history calls for a serious sentence in this case to prevent him from doing further harm to the community.

## Summary and Conclusion

Given the nature and circumstances of the offense and the defendant's history and characteristics, defendant merits a severe sentence.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: February 7, 2019      /s/ Stephen P. Baker
STEPHEN P. BAKER
JOEL S. FAUSON
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, Michigan 49501
Tel. (616) 456-2404