1    UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF MICHIGAN
2               SOUTHERN DIVISION

3    _____

4    UNITED STATES OF AMERICA,

5                    Plaintiff,
                                    DOCKET NO. 1:17-cr-193
6    vs.

7
     ALEX ALBERTO CASTRO,
8    MICHAEL YADELL NELSON,
     SOLON TATUM, DANTE ANDRE HOWARD,
9    ERIKA ATKINSON, MAX AVERY,
     ANDREA THOMPSON, AARON LEON COX,
10
                    Defendant.
11   _____/

12

13             VOLUME XI (PAGES 2626-2678)

14             TRANSCRIPT OF JURY TRIAL

15     BEFORE THE HONORABLE ROBERT J. JONKER, CHIEF JUDGE

16               GRAND RAPIDS, MICHIGAN

17                 October 23, 2018

18

19   Court Reporter:          Glenda Trexler
                              Official Court Reporter
20                            United States District Court
                              685 Federal Building
21                            110 Michigan Street, N.W.
                              Grand Rapids, Michigan 49503
22

23   Proceedings reported by stenotype, transcript produced by

24   computer-aided transcription.

25

```
 1   A P P E A R A N C E S:

 2   FOR THE GOVERNMENT:

 3        MR. STEPHEN P. BAKER
          UNITED STATES ATTORNEY'S OFFICE
 4        330 Ionia Avenue, NW
          P.O. Box 208
 5        Grand Rapids, MI 49501-0208
          Phone:  (616) 808-2056
 6        Email: stephen.baker@usdoj.gov

 7        MR. JOEL FAUSON
          UNITED STATES ATTORNEY'S OFFICE
 8        330 Ionia Avenue, N.W.
          P.O. Box 208
 9        Grand Rapids, Michigan 49503-0208
          Phone:  (616) 456-2404
10        Email:  joel.fauson@usdoj.gov

11   FOR THE DEFENDANT ALEX CASTRO:

12        MR. MATTHEW J. LOMBARD
          LAW OFFICES OF MATTHEW J. LOMBARD
13        11400 West Olympic Boulevard, Suite 1500
          Los Angeles, California 90064
14        Phone:  (424) 371-5930
          Email:  mlombard@lombardlaw.net
15

16   FOR THE DEFENDANT MICHAEL YADELL NELSON:

17        MR. LAWRENCE J. PHELAN
          HAEHNEL & PHELAN
18        200 North Division Avenue
          Grand Rapids, Michigan 49503
19        Phone:  (616) 454-3834
          Email: lphelan.hp@gmail.com
20

21

22

23

24

25
```

FOR THE DEFENDANT SOLON TATUM:

    MS. MARY CHARTIER
    CHARTIER & NYAMFUKUDZA, PLC
    1905 Abbot Road, Suite 1
    East Lansing, Michigan 48823
    Phone:  (517) 885-3305
    Email: mary@cndefenders.com

    MR. TAKURA NYAMFUKUDZA
    CHARTIER & NYAMFUKUDZA, PLC
    1905 Abbot Road, Suite 1
    East Lansing, Michigan 48823
    Phone:  (517) 885-3305
    Email: takura@cndefenders.com

FOR THE DEFENDANT DANTE HOWARD:

    MR. PATRICK WILLIAM O'KEEFE, II
    O'KEEFE LAW, PLLC
    3893 Okemos Road, Suite B-1
    Okemos, Michigan 48864
    Phone:  (517) 253-0114
    Email:  5469132420@filings.docketbird.com

FOR THE DEFENDANT ERIKA ATKINSON:

    MS. SARAH RILEY HOWARD
    PINSKY, SMITH, FAYETTE & KENNEDY, LLP
    146 Monroe Center Street, N.W., Suite 805
    Grand Rapids, Michigan 49503-2824
    Phone:  (616) 451-8496
    Email:  sarahrileyhoward@hotmail.com

    MS. ERIN DORNBOS
    PINSKY, SMITH, FAYETTE & KENNEDY, LLP
    146 Monroe Center Street, N.W., Suite 805
    Grand Rapids, Michigan 49503-2824
    Phone:  (616) 451-8496
    Email:  edornbos@psfklaw.com

```
 1    FOR THE DEFENDANT MAX AVERY:

 2        MR. JOHN J. FRAWLEY
          JOHN J. FRAWLEY, P.C.
 3        303 South Waverly Road, Suite 2
          Lansing, Michigan 48917
 4        Phone:  (517) 327-0200
          Email:  frawleylaw@yahoo.com
 5
      FOR THE DEFENDANT ANDREA THOMPSON:
 6
          MR. KEITH W. TURPEL
 7        3018 Oakland Drive
          Kalamazoo, Michigan 49008
 8        Phone:  (269) 381-1911
          Email:  Keithturpel@hotmail.com
 9
      FOR THE DEFENDANT AARON LEON COX:
10
          MR. MICHAEL DARRAGH HILLS
11        HILLS AT LAW, PC
          425 South Westnedge Avenue
12        Kalamazoo, Michigan 49007
          Phone:  (269) 373-5430
13        Email:  mhills@hillslawoffice.com

14        MR. JAMES D. HILLS
          HILLS AT LAW, PC
15        425 South Westnedge Avenue
          Kalamazoo, Michigan 49007
16        Phone:  (269) 373-5430
          Email:  jhills@hillslawoffice.com
17
18                      *   *   *   *   *

19

20

21

22

23

24

25
```

Grand Rapids, Michigan

October 23, 2018

8:35 a.m.

P R O C E E D I N G S

*(Judge, jury, counsel, and parties present in the courtroom)*

THE COURT: All right. Please be seated. Welcome back everyone. This is -- I haven't even counted up the days, but it is the day that definitely you, the jury, will get the case. And so I'm not going to spend any more time than we need to to finish up in court this morning. I have a few minutes' worth of instructions that will complete the set, and then after that we will proceed to put the case in your hands and get you the equipment you need, and, of course, the exhibits. I think the equipment was in there already this morning? Okay. Good.

So let's go to the last bit of instructions. I earlier concluded the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me conclude by discussing your deliberations in the jury room and your possible verdicts.

The first thing that you should do in the jury room is choose someone to be your foreperson. This person will help guide your discussions and will speak for you here in court.

Once you start deliberating, do not talk to the jury

1    officer or to me or to anyone else except each other about the

2    case.  If you have questions or messages, you must write them

3    down on a piece of paper, have your foreperson then give them

4    to the jury officer, the officer will give them to me, and I

5    will respond as soon as I can.  I may have to talk to the

6    lawyers about what you have asked, so it may take me some time

7    to get back to you.

8           And I'm going to go off-script and amplify this a

9    little bit because I find that jurors don't often understand

10   the process we'll use.  So if you have questions, follow that

11   procedure.  I'll check with the lawyers, and when I have an

12   answer, I'm going to bring you back into court so that I can

13   give you the answer here in court all together just so that

14   everybody hears everything I'm saying to you in open court just

15   like all the evidence.  That's why sometimes it takes a little

16   while to get back and respond to your questions.  But that's

17   what the process will be.

18          And then returning to the script:  Any questions or

19   messages normally should be sent to me through your foreperson.

20          I will give you the paper and electronic exhibits

21   admitted into evidence to review in your jury room.  If you

22   want to see any of the other exhibits that were admitted in

23   evidence, you may send me a message, and I will arrange for you

24   to see them.

25          One more thing about messages.  Do not ever write

1    down or tell anyone how you stand on your votes.  For example,

2    do not write down or tell anyone that you're split 6 to 6 or

3    8 to 4 or whatever your vote happens to be.  That should stay

4    secret until you are finished.

5            Remember that you must make your decision based only

6    on the evidence that you saw and heard here in court.  Do not

7    try to gather any information about the case on your own while

8    you're deliberating.  For example, do not conduct any

9    experiments inside or outside the jury room.  Do not bring any

10   books like a dictionary or anything else with you to help with

11   your deliberations.  Do not conduct any independent research,

12   reading, or investigation about the case.  And do not visit any

13   of the places that were mentioned during the trial.  That

14   personal visit is probably unlikely in any event, but what's

15   not unlikely in today's day and age is that one or more of you

16   is here with a web browser on your phone, and if you're like a

17   lot of people, your natural inclination is to find out about

18   the world with that web browser.  It's a natural thing and it's

19   the way we ordinarily deal with our life in today's world, but

20   it's not the way you may function as jurors.  And I want to

21   emphasize that.  When you go back to that deliberation, you

22   have to rely only on the evidence you heard here in court, only

23   on the admitted exhibits, and you can't go out and research

24   even on those tools that all of us have learned to use in our

25   daily life.  Make your decision based only on the evidence you

1  saw and heard here in court.

2         Your verdict, whether it is guilty or not guilty,

3  must be unanimous.  To find a defendant guilty, every one of

4  you must agree that the government has overcome the presumption

5  of innocence with evidence that proves the defendant's guilt

6  beyond a reasonable doubt.  To find the defendant not guilty,

7  every one of you must agree that the government has failed to

8  convince you beyond a reasonable doubt.  Either way, guilty or

9  not guilty, your verdict must be unanimous.

10        Now that all the evidence is in and the arguments are

11 completed, you are free to talk about the case in the jury

12 room.  In fact, it is your duty to talk with each other about

13 the evidence and to make every reasonable effort you can to

14 reach unanimous agreement.  Talk with each other, listen

15 carefully and respectfully to each other's views, and keep an

16 open mind as you listen to what your fellow jurors have to say.

17 Try your best to work out your differences.  Do not hesitate to

18 change your mind if you are convinced that other jurors are

19 right and that your original position was wrong.  But do not

20 ever change your mind just because the other jurors see things

21 differently or just to get the case over with.  In the end your

22 vote must be exactly that:  Your own vote.  It is important for

23 you to reach unanimous agreement, but only if you can do so

24 honestly and in good conscience.

25        No one will be allowed to hear your discussions in

the jury room and no record will be made of what you say, so
you should all feel free to speak your minds.  Listen carefully
to what the other jurors have to say and then decide for
yourself if the government has proved the defendants guilty
beyond a reasonable doubt.

If you decide that the government has proved a
defendant guilty, then it will be my task to decide what the
appropriate punishment should be.  Deciding what the punishment
should be is my task, not yours.  It would violate your oaths
as jurors to even consider the possible punishment in deciding
your verdict.  Your job is to look at the evidence and decide
if the government has proved a defendant guilty beyond a
reasonable doubt.

I've prepared verdict forms that you should use to
record your verdict.  There is a separate verdict form for each
defendant.  If you decide that the government has proved one or
more of the charges against a defendant beyond a reasonable
doubt, say so by having your foreperson mark the appropriate
places on the form.  If you decide that the government has not
proved one or more of the charges against a defendant beyond a
reasonable doubt, say so by having your foreperson mark the
appropriate places on the form.  After you have reached a
verdict on each defendant, your foreperson should then sign and
date the forms and then send a note to me letting me know that
you have reached a verdict.  Your foreperson will bring the

1    signed forms into court and deliver them to me here.

2            Remember that each of the defendants in this case are

3    only on trial for the particular crimes charged in the Second

4    Superseding Indictment.  Your job is limited to deciding

5    whether the government has proved the crimes charged.  And also

6    remember that whether anyone else should be prosecuted and

7    convicted for these crimes is not a proper matter for you to

8    consider.  The possible guilt of others is no defense to a

9    criminal charge.  Your job is to decide if the government has

10   proved each individual defendant guilty, and do not let the

11   possible guilt of others influence your decision in any way.

12           Remember that if you took notes during the trial,

13   your notes should be used only as memory aids.  You should not

14   give your notes greater weight than your independent

15   recollection of the evidence.  You should rely upon your own

16   independent recollection of the evidence or lack of evidence

17   and should not be unduly influenced by the notes of other

18   jurors.  Notes are not entitled to any more weight than the

19   memory or impression of each juror.  Your notes, of course, are

20   not evidence.  Whether you took notes or not, each of you must

21   form and express your own opinion as to the facts of the case.

22           Let me conclude by repeating something that I said to

23   you earlier.  Nothing that I have said or done during this

24   trial was meant to influence your decision on the facts in any

25   way.  You decide for yourselves if the government has proved

the defendants guilty beyond a reasonable doubt.

And that's the end of the instructions, a copy of which you'll get, along with the verdict forms, one for each defendant, and the electronic and paper exhibits I talked to you about.

At this point we're going to excuse the jury to the jury room, and we're going to call our officers forward in a minute to be sworn to keep the jury secure.  So are they here and ready?  All right.

And then the other thing we have to do is formally separate the jury from the alternates.  So jury service is hard.  Alternate jury service is uniquely hard because after sitting here for over two weeks just like everybody else, faithfully listening and preparing for the case, the alternate jurors still can't unload.  They still can't deliberate and get to the point of what I think is relief for most jurors, the opportunity to actually discuss the case with each other.  They are in effect understudies like you were on a show on Broadway, and they have to continue in that role separate from the regular jury, the regular performers if you're in a Broadway show, unless and until they are called upon to take the part of one of the regular jurors who can't finish the job for some reason.  As occasionally happens.

So we're going to have the alternate jurors brought to a different part of the building.  We did hopefully arrange

1   so that you've got some options for entertainment, video or

2   otherwise, so that you don't have to just sit there quietly as

3   the jury is doing its work.  But, of course, what you do will

4   be up to you, as long as you can do it in that jury room.

5          If the jury comes back for a question, as sometimes

6   they do, then we'll bring the jurors that are the alternate

7   jurors back here so that they can hear the question and the

8   answer along with everybody else.  That way in case you're

9   called in just like an understudy, you'll be ready with all the

10  information that the regular jury has.

11         So our alternate jurors are Ms. Robinson and

12  Ms. Stewart in seats 7 and 14.  Once these officers are sworn,

13  we'll bring you all back, you can gather your things, make sure

14  you get your lunch order in, and then the regular jury will go

15  to work.

16         So these are the individual officers who are going to

17  deal with the protection of the jury, keeping it quiet and

18  separated from all of us so that we don't hear and so that the

19  notes can go back and forth.  And we'll have these two

20  individuals sworn now.  Because as you've seen, whenever people

21  in court undertake to do something, they take an oath or an

22  affirmation to do it according to law.

23         So go ahead, whether it's Ms. Bourque or Mr. Schmidt,

24  swear these officers.

25         *(The jury officers were administered the oath)*

1          THE COURT:  All right.  Then we will be in our
2     recess, and we will await word from the jury.
3          (Jury exited the courtroom at 8:46 a.m.)
4          THE COURT:  All right.  Anything else from counsel?
5          MR. BAKER:  Not from the government, Your Honor.
6     Thank you.
7          THE COURT:  From defense counsel?
8          MS. CHARTIER:  No, Your Honor.
9          MS. HOWARD:  No, Your Honor.
10         MR. LOMBARD:  No, Your Honor.
11         THE COURT:  Okay.  Please make sure we do have a way
12    to contact you.  Hopefully you can all stay around the building
13    for at least an hour or so to get the jury settled in to see if
14    they have any early questions, and then we'll keep you posted
15    on developments.
16         I think all the exhibits were prepped and ready as of
17    yesterday.  So I said yesterday what I often say as the jury
18    leaves, so I won't repeat it other than to say I really think
19    this went a lot better than I thought it would.  From my
20    perspective people were expected to be prepared, but not only
21    prepared but be focused on the issues and themes that mattered
22    to your respective clients.  And we'll see what the jury does,
23    but I don't think anybody could be disappointed or feel like
24    their issue was not fairly presented to the jury and done, in
25    my view, in a very effective way by all counsel.  So that's the

1    best I can hope for in a trial process. That through the

2    advocacy of skilled people like we have here, the issues get

3    thoroughly vetted. And I'm going to be as interested to see

4    how things go as I know you will. So we'll see you later

5    today.

6           *MR. PHELAN:* Thank you, Your Honor.

7           *THE CLERK:* Court is in recess.

8       *(Recess taken at 8:48 a.m.)*

9       *(Back on the record at 9:30 a.m.)*

10          *THE COURT:* I did get a note, and I think this might

11    just have been my oversight in the housekeeping, but I'll read

12    it to you and show it to you. "On the jump drive how do we

13    know which calls and videos correspond to a defendant? Are we

14    allowed to know? They are not labeled by name or date, only

15    exhibit. Is there a guide to each call/video exhibit?" So

16    take a look at that.

17          I had thought when we talked about the drives the

18    parties were going to have an index of some kind that put the

19    dates and at least the government's view of what they represent

20    are on the exhibits. And that must not have been in the book.

21    Or if it is, I'm not finding that. Is there a way to get that?

22    And do the defendants have anything they may want to say about

23    it? And have the defendants done that for their thumb drive?

24          *MR. BAKER:* We did talk about it, Your Honor. We are

25    in the process of preparing it. It wasn't in the book that

went back yesterday.  We will get it to the Court.

THE COURT:  All right.

MR. BAKER:  And it will -- just for everyone's
basis -- the way they are saved on there is by target phone and
by number.  And we could get a date.  And it's up to each of
the defendants here, but we could then define the speakers,
just the headers from each one, in terms of the index.  The
header of each one of our transcripts was target phone number,
call number, date, time, to and from in terms of who the
speakers were.

THE COURT:  All right.  Ms. Chartier.

MS. CHARTIER:  We did have an index for our two, but
I can actually send an email if the Court -- I don't know if
anyone would be willing to print it out.  So the first call
would relate to allegedly Mr. Castro and then the second would
be for Mr. Tatum, the video.

THE COURT:  I think with the volume of information
they need to have some guide, and I thought they were going to
have it.  I would just want to tell them -- I'll bring them in
in a minute -- the guide they are going to get is just meant to
be, in the case of the government's thumb drive, the
government's version of what's on there.  They still have to
make that judgment, of course.  And in the defense case the
same thing.  But I don't want them to get the idea that the
exhibit list or document is evidence, but it certainly is, I

1    think, an essential guide.

2            MR. LOMBARD:  Your Honor, I wouldn't want -- I would

3    like to see the proposed guide.

4            THE COURT:  Right.  Absolutely.

5            MR. LOMBARD:  I don't want to see -- I don't think

6    there should be the timestamp -- the call is a timestamp.  I'm

7    not sure how the time actually gets on the call.  How they

8    could take that information.

9            THE COURT:  All right.  I think what he's

10   referencing, Mr. Baker, is the information that was on the

11   header of the transcripts identified as the government's

12   interpretation of what the call was.

13           Do you have objections to that, if I remind the jury

14   that it's not evidence, it's simply their government version of

15   what they are listening to?

16           MR. LOMBARD:  I want to see.  In hindsight in the

17   case, Your Honor, I probably should have objected to the

18   transcripts with the headers that were put up there because I

19   think it's misleading to the jury.  So that's what I'm

20   concerned about.  That they have an exhibit that reflects the

21   headers that were put up there necessarily.  That's the

22   problem.  And I probably should have objected to it and I

23   didn't from the very beginning.

24           THE COURT:  All right.  Mr. Baker.

25           MR. BAKER:  Your Honor, in response to that, in terms

1    of the timestamp and the date, there was testimony in open

2    court in the foundation of the wire about the pen register trap

3    and trace, the manner and the technique the DEA used.

4         From the government's perspective -- and it wasn't

5    objected to, but I think it would be admissible, that

6    information would be admissible as the product of a court order

7    through the process which the wire ran.  That's not even an

8    assertion with regard to who was saying what or when.  That's

9    simply a portion of the digital evidence that came in.  So

10   that's what we would include.

11        I think the other issue that we would include from

12   the government's perspective is the speakers on the call, and

13   that is obviously for the jury to consider, but they want to

14   consider do we believe this is the speaker on this call.

15   That's their determination.  But some indication of who the

16   government proposes that it is I think might be helpful in

17   deliberations.

18        THE COURT:  Okay.  Anybody else at the defense side

19   want to be heard?  (No response).

20        Okay.  All right.  What I would propose to do is

21   bring the jury in, I'll tell them that we're in the process of

22   having what amounts to a table of contents or index prepared,

23   and I'm not sure I'm going to fine tune whether it's the date

24   and timestamp that may have evidentiary support or the names or

25   anything like that.  I'm just going to tell them it's not

1    evidence any more than their notes are evidence.  It's simply

2    intending to be a guide to the evidence, and they can accept it

3    or reject it as they like based on the evidence they have

4    heard.  But that I certainly agree they should have some method

5    by which to get some order on the information that they are

6    asked to review.

7           I do think before anything goes back there from

8    either side I want you to vet it together, and if you have a

9    disagreement about it, let me know and we'll convene.  But my

10   view of what Mr. Lombard said is that as long as it's only the

11   information that was in that header and I give the jury --

12   remind them of the instruction that that's not evidence, I

13   think the concerns that he expresses are adequately handled.

14   So that would be my ruling on that.  But if you see something

15   else that you think is problematic --

16           *MR. LOMBARD:*  Yes, Your Honor.  And I don't think --

17   I mean, that's the purpose of an exhibit list.  Something

18   similar to that is a guide, but something a little bit more

19   than that is more than a guide.

20           *THE COURT:*  Let's see if there's -- when you see what

21   they actually have -- a problem.  And if there is, we'll

22   convene.  But that's what I intend to tell the jurors now.  And

23   we'll bring the alternates in so they can hear it as well.

24           Anything else before we bring in the jury?  (No

25   response).  Okay.  Let's do that, then.

1          *(Jury entered the courtroom at 9:38 a.m.)*

2                  *THE COURT:*  All right.  Welcome back.  Please be

3     seated.  We're joined now by the jury and the alternates.  And

4     I have a question from the jurors.  I'll just read it so that

5     the alternates can hear it as well.  "On the jump drive how do

6     we know which calls and videos correspond to a defendant?  Are

7     we allowed to know?  They are not labeled by name or date, only

8     exhibit.  Is there a guide to each call/video exhibit?"

9                  So I had thought when we sent the materials back that

10    there would be some kind of an index for you, because there

11    should be.  There should be an index that gives you some

12    meaningful way to target the information as you go.  And it

13    turns out that that's in process with the lawyers right now,

14    okay?  So they are finalizing that.

15                 What I do want to highlight for you is that when it's

16    ready, we'll deliver it back to you, but you need to

17    understand, just like your notes or anything else, that exhibit

18    list or that guide is not evidence in and of itself.  It's

19    simply a party's version of a guide or table of contents to

20    what's there.  And you need to make your own judgment.  And as

21    you've heard from the arguments, in some cases the parties

22    disagree about what is on that tape.  Okay?  So when you get

23    it, the only thing you should use it for is as an index or a

24    guide that I hope will give you meaningful information.  I'm

25    sure you didn't all memorize the exhibit numbers along the way.

1    But that's what we're going to do.  I had thought it

2  was done already, but I was wrong about that.  So it's in

3  process.  And it may take a few minutes to get that.  And we'll

4  get one for the defense exhibits too if you haven't had it, so

5  that in both cases you have a meaningful guide or index.  And

6  if you use it only for that purpose, it's fine.  And then you

7  make your own judgments about what you're listening to, what

8  you're seeing, and all the rest.  So if that is responsive, I

9  hope it is, as soon as I have it, I'll bring it back to you.

10  If there's anything else you need or if I missed the point of

11  your question, let me know with another question.  Okay?  And

12  then we'll excuse you now.  Thank you.

13    *(Jury exited the courtroom at 9:40 a.m.)*

14    *THE COURT:*  Anything else from counsel?

15    *MR. BAKER:*  No, Your Honor, we'll be back in touch as

16  soon as possible.

17    *THE COURT:*  Okay.

18    *(Recess taken at 9:41 a.m.)*

19    *(Back on the record at 10:54 a.m.)*

20    *THE COURT:*  All right.  We're back on the record, and

21  I understand that the parties have a disagreement over the

22  index.  I have in front of me what the government is proposing,

23  I think.  Is that right, Mr. Baker?

24    *MR. BAKER:*  You're right, Your Honor, and the Court

25  is lucky enough to be the one person here with a printed copy

1    of it.  We've already looked at it visually.

2         THE COURT:  James, why don't you put this on the

3    document camera so we can all look at it together.  Thanks.

4         Go ahead.  You can start talking about the issues.

5    And if you want to introduce what you think it is, Mr. Baker,

6    and then we'll go to any defense objections.

7         MR. BAKER:  Thank you, Your Honor.  I think by and

8    large we've been through all the exhibits from both sides and

9    we are in agreement.  I'm sorry it took us a little time, but

10   we wanted to make sure that both sides were agreeing on that.

11   The dispute on this document here, you can see it's a

12   spreadsheet.  The exhibit number is in the first column, the

13   date of the call or the text message is in the second, the

14   timing of the call or the text message, the target phone it was

15   intercepted from, the from and to of the direction of the

16   communication, and then it has a call or text column and a call

17   or text number.  The dispute between the parties, Your Honor,

18   is that -- and I'll let the defense speak for themselves -- but

19   I believe there's an objection to including the texts.  The

20   texts themselves are actual evidence back with the jury right

21   now in Government Exhibit 8A.

22        From the government's perspective the importance of

23   this index of the communications is in aid of the jury for the

24   chronology.  They are getting the information in sequence in

25   terms of the timing.  And to leave out the text message between

1    the parties that are communicating at that time would not give
2    a picture of when the evidence was presented for those times.
3    Obviously the information here is up to the jury in terms of
4    determination, in terms of who is communicating, but the timing
5    of the communication of the exhibit, I believe, is important
6    for the information that was presented in court, and that's why
7    the government believes the texts should be included in this
8    index that goes back.

9           We have a separate index for both the physical and
10   pictured exhibits from the government and from -- and for the
11   video, and for the defense for the same sorts of exhibits, and
12   we've agreed as to those.

13          *THE COURT:*  Are the texts on the thumb drive or not?
14          *MR. BAKER:*  They are not, Your Honor.
15          *THE COURT:*  All right.  Thank you.
16          Go ahead, Mr. Lombard.
17          *MR. LOMBARD:*  Thanks, Your Honor.  Thank you.  Our
18   position is that only the index of the calls should go back.  I
19   understand why Mr. Baker did it this way, because you want the
20   chronology, and the texts themselves are already back there,
21   but they want an index for the thumb drive.  And in response to
22   the jury's question, we should just give them an index to the
23   thumb drive.  I don't think we need anything other than the
24   exhibit number, from, to, and I think that's it.  The rest of
25   the information I don't think is necessary.

1          You know, this is -- they sat through here, they

2    heard the evidence, they have the calls.  And we need to be

3    careful that we're not giving them anything that -- I know,

4    Judge, you gave them the instruction that their memory and

5    their interpretation of the evidence is what matters, but we

6    certainly don't want to influence in any way at this point

7    whatsoever with anything we introduce to them.  So as careful

8    and limited as possible I think is the best approach.

9          *THE COURT:*  All right.  Any other defense counsel

10   want to be heard?

11         *MS. CHARTIER:*  I concur with Mr. Lombard.  I do

12   object to the text messages going down there.  Again, I think

13   this chronology is -- this is more of a summary exhibit the

14   government wants to put back there as opposed to just an index,

15   which is what the jury requested as it relates to the calls.

16   And for that reason I think it's improper.

17         *THE COURT:*  All right.  Anybody else?

18         *MR. HILLS:*  I would agree.  This looks more like a

19   summary exhibit to me as opposed to what the exhibit number is

20   and maybe to -- who it's from and to.

21         *THE COURT:*  All right.  Anybody else?

22         *MR. LOMBARD:*  And, obviously, Your Honor, if we

23   resolve it here, was the Court just going to send it back or

24   was the Court going to bring them back in?

25         *THE COURT:*  It depends a little bit on how I resolve

1  it.

2       *MR. LOMBARD:*  Because I do -- I know the Court

3  advised them -- I would like them to be advised when it's given

4  to them that because it says "Castro" where it should be -- you

5  know, our position is "Source of supply," that's a distinction

6  that I think everyone knows, that we're disputing that we're

7  the source of supply, but just to remind them, I would feel

8  more comfortable.

9       *THE COURT:*  All right.  Anything else?  Any response,

10  Mr. Baker?

11       *MR. BAKER:*  Your Honor, I do feel like this exhibit

12  needs to have the date and time.  I know that the defense is

13  objecting to that from the comments right here.

14       Without the date and time, I don't know that it's

15  useful to the jury, and it's not responsive to their request.

16  Also for that same reason, I think that the chronology, which

17  is really all that's reported here, in addition to the proposed

18  names from the government's perspective.

19       *THE COURT:*  All right.  And then do the parties have

20  agreement on an index or whatever you want to call it for the

21  other exhibits?

22       *MS. CHARTIER:*  Yes, Your Honor.

23       *MR. BAKER:*  We do, Your Honor, from both sides.

24  We've consulted.  That's one of the things that took us a

25  little bit of time, but -- to come to conclusion, but I think

1    they are very neutral.

2         *MR. LOMBARD:* That is true, Your Honor. I did put in

3    the exhibits referring to Mr. Castro in the communications

4    where there were source of supply communications. It does say

5    "Alex Castro," and that's why I'm asking the Court to give that

6    instruction that their memory and -- this is not evidence. The

7    instruction the Court gave.

8         *THE COURT:* All right. Okay. Well, I think the

9    texts ought to come off this exhibit, because what they are

10    looking at and asking for is an index of the thumb drive. And

11    the thumb drive doesn't include the texts. The texts are

12    separate. And I think the only thing that can properly go back

13    is some kind of an index for the calls themselves that are on

14    that thumb drive to guide them through. And they will have to

15    make their own way in terms of lining up the calls and the

16    texts and the other exhibits. But I think an exhibit list that

17    the parties have agreed on, along with this, will give them the

18    tools they need in a neutral way to walk through the evidence

19    and then draw their own conclusions.

20         Personally I don't have any problem with the date and

21    time. I do think there was evidentiary foundation for that

22    actually when we were playing the calls in court. And the to

23    and from is definitely government interpretation in most cases.

24    Not all. There are some stipulations. But I don't think I

25    need to instruct them again. I think when I instructed them

1    when they were out here the last time I made it clear they

2    would be getting this information but it would simply be the

3    interpretation of the submitting party as to what it meant and

4    it would be up to them to make a decision.  I think I even

5    expressly indicated that there were some disagreements between

6    the parties.  I don't think I singled out Mr. Castro, but I did

7    emphasize disagreements.  And so I think they have already been

8    instructed on it.  And if the document is revised to exclude

9    the texts, I think that can go back with the other index and

10   they will have the tools they need.

11          MR. LOMBARD:  Your Honor, just briefly, this

12   call/text number on the far -- I mean -- and the target phone

13   numbers, I mean, I just think it's -- I don't know that it

14   really aids them in understanding that information.

15          THE COURT:  Well, I'm sure they will take the text

16   off.  The call number is really redundant to some extent of the

17   exhibit number, but I think the target phone is important to

18   walk them through what's on the thumb drive since it's

19   organized by target phone as is exhibit numbering.  Since the

20   middle digit in all of the exhibit numbers is the target phone.

21   So I don't know that it adds much to it, but it certainly --

22   and I guess there's another exhibit in evidence actually now

23   that I think of it that identifies the target phone, so it

24   would be useful to give everybody a clear idea of what they are

25   looking at.  So I think those can stay.  But the text

references should be omitted.

Ms. Howard.

MS. HOWARD:  Your Honor, we realize that we did not send back Defense 5, so I brought extra copies of that too.

THE COURT:  I don't remember what Defense 5 is.

MS. HOWARD:  It's a picture of Ray Lee.  I've shown the government already.

THE COURT:  Okay.  All right.  So we'll put that back when we get the other items to submit.

MS. HOWARD:  Thank you, Your Honor.

THE COURT:  Okay.  Is there anything else now?

MS. CHARTIER:  So did you send back the government exhibit list and the defense exhibit list that we agreed on already?

MR. BAKER:  I did not, Your Honor, and the reason being I believe the final version of the government exhibit list is one we worked through on your computer, Ms. Chartier.

MS. CHARTIER:  Yes.  So then you couldn't do that. That's right.  But I did send it around to everyone.

So would the Court like me to send it to James, or is there someone in particular to --

THE COURT:  So if it isn't here in hard copy, get it to us somehow, but then everybody has got to bless the hard copy before we walk it back there.

MS. CHARTIER:  Okay.  We sent an email copy of the

1    government's around to everyone.

2           *THE COURT:* Okay.

3           *MR. BAKER:* I believe all sides have agreed upon

4    those copies. We have been working on the contingency of the

5    texts, so actually maybe I'll talk to defense counsel about one

6    person reviewing that with me and we can get that done and back

7    to you in a matter of moments, Your Honor.

8           *THE COURT:* Okay. Great. Thank you.

9           *MR. BAKER:* Thank you.

10          *MS. CHARTIER:* Thank you, Your Honor.

11          *THE CLERK:* Court is in recess.

12       *(Recess taken at 11:05 a.m.)*

13       *(Back on the record at 2:24 p.m.)*

14          *THE COURT:* I have a note that the jury has reached a

15    verdict which Mr. Schmidt will publish. Is there anything we

16    need to do before bringing in the jury?

17          *MS. HOWARD:* No, Your Honor.

18          *MR. BAKER:* No, Your Honor.

19          *THE COURT:* All right. So let's bring in the jury.

20       *(Jury entered the courtroom at 2:25 p.m.)*

21          *THE COURT:* Please be seated. I have a note I think

22    from Ms. Gebauer as the foreperson of the jury. Is that right?

23          *JUROR GEBAUER:* Yes, sir.

24          *THE COURT:* And it says "We've reached a verdict."

25    And is that in fact true?

1          *JUROR GEBAUER:*  Yes, sir.

2          *THE COURT:*  Okay.  And were all your decisions

3     unanimous?

4          *JUROR GEBAUER:*  Yes, sir.

5          *THE COURT:*  All right.  If you would hand the verdict

6     forms to Ms. Bourque, she'll bring them up to me.

7          And what I'm going to do, because there was a

8     separate form here for each of the defendants, is read the

9     verdict as to each defendant, and then after I've read it as I

10    interpret it, Ms. Bourque is going to ask you "Was that and is

11    that your verdict?"  Okay?  And then we'll go around and then

12    we'll do it for the second verdict form, and we'll move around

13    until we get through all eight.  All right?

14         So this is the verdict in the case of the

15    United States against Alex Castro, Count 1, conspiracy to

16    distribute and possess with the intent to distribute controlled

17    substances.  The jury finds Mr. Castro guilty.  And with

18    respect to heroin at a thousand grams, one kilogram or more of

19    heroin, 5,000 grams or 5 kilograms or more of cocaine, and with

20    respect to marijuana less than 50,000 grams or 50 kilograms.

21    Signed by the foreperson.  Today's date.

22         And I'll ask Ms. Bourque to poll the jury on

23    Mr. Castro and ask that the verdict be published.

24         *THE CLERK:*  Ms. Albonico, was that and is that your

25    verdict?

```
1                    JUROR ALBONICO:  Yes.
2                    THE CLERK:  Mr. Rogers, was that and is that your
3        verdict?
4                    JUROR ROGERS:  Yes.
5                    THE CLERK:  Ms. Misner, was that and is that your
6        verdict?
7                    JUROR MISNER:  Yes.
8                    THE COURT:  Let's start again.  Let's start again.
9                    THE CLERK:  Sorry.  Ms. Albonico, was that and is
10       that your verdict?
11                   JUROR ALBONICO:  Yes.
12                   THE CLERK:  Mr. Rogers, was that and is that your
13       verdict?
14                   JUROR ROGERS:  Yes.
15                   THE CLERK:  Ms. Misner, was that and is that your
16       verdict?
17                   JUROR MISNER:  Yes.
18                   THE CLERK:  Mr. Bennett, was that and is that your
19       verdict?
20                   JUROR BENNETT:  Yes.
21                   THE CLERK:  And Ms. Gebauer, was that and is that
22       your verdict?
23                   JUROR GEBAUER:  Yes.
24                   THE CLERK:  And Ms. Smith, was that and is that your
25       verdict?
```

1          JUROR SMITH:  Yes.

2          THE CLERK:  And Mr. Colunga, was that and is that

3    your verdict?

4          JUROR COLUNGA:  Yes.

5          THE CLERK:  Ms. Courtright, was that and is that your

6    verdict?

7          JUROR COURTRIGHT:  Yes.

8          THE CLERK:  And Ms. Martinez, was that and is that

9    your verdict?

10          JUROR MARTINEZ:  Yes.

11          THE CLERK:  Ms. Bowles, was that and is that your

12    verdict?

13          JUROR BOWLES:  Yes.

14          THE CLERK:  And Mr. Wood, was that and is that your

15    verdict?

16          JUROR WOOD:  Yes.

17          THE CLERK:  And Ms. Parsell, was that and is that

18    your verdict?

19          JUROR PARSELL:  Yes.

20          THE COURT:  All right.  Moving, then, to the case of

21    the United States against Michael Nelson.  With respect to

22    Count 1, conspiracy to distribute and possess with the intent

23    to distribute controlled substances, the jury finds Mr. Nelson

24    not guilty.

25          With respect to Count 5, possession with the intent

1  to distribute cocaine on or about July 25, 2017, the jury finds

2  Mr. Nelson not guilty.

3  And with respect to Count 10, possession with the

4  intent to distribute cocaine on or about August 11, 2017, the

5  jury finds Mr. Nelson not guilty.

6  Would you please poll the jury, and we'll publish

7  that verdict form.

8  THE CLERK:  Ms. Albonico, was that and is that your

9  verdict?

10  JUROR ALBONICO:  Yes.

11  THE CLERK:  Mr. Rogers, was that and is that your

12  verdict?

13  JUROR ROGERS:  Yes.

14  THE CLERK:  Ms. Misner, were those and are those your

15  verdicts?

16  JUROR MISNER:  Yes.

17  THE CLERK:  And Mr. Bennett, were those and are those

18  your verdicts?

19  JUROR BENNETT:  Yes.

20  THE CLERK:  And Ms. Gebauer, were those and are those

21  your verdicts?

22  JUROR GEBAUER:  Yes.

23  THE CLERK:  And Ms. Smith, were those and are those

24  your verdicts?

25  JUROR SMITH:  Yes.

THE CLERK:  And Mr. Colunga, were those and are those
your verdicts?

JUROR COLUNGA:  Yes.

THE CLERK:  And Ms. Courtright, were those and are
those your verdicts?

JUROR COURTRIGHT:  Yes.

THE CLERK:  And Ms. Martinez, were those and are
those your verdicts?

JUROR MARTINEZ:  Yes.

THE CLERK:  And Ms. Bowles, were those and are those
your verdicts?

JUROR BOWLES:  Yes.

THE CLERK:  And Mr. Wood, were those and are those
your verdicts?

JUROR WOOD:  Yes.

THE CLERK:  And Ms. Parsell, were those and are those
your verdicts?

JUROR PARSELL:  Yes.

THE COURT:  Thank you.

Turning to the case of the United States against
Solon Tatum, with respect to Count 1, conspiracy to distribute
and possess with intent to distribute controlled substances,
the jury finds Mr. Tatum guilty.  The jury does not find heroin
involved but finds less than 500 grams of cocaine involved in
the conspiracy.

1          Turning to Count 2, possession with the intent to

2    distribute cocaine on or about July 14, 2017, the jury finds

3    Mr. Tatum not guilty.

4          With respect to Count 3, possession with the intent

5    to distribute cocaine on or about July 18, 2017, the jury finds

6    Mr. Tatum guilty and does that with respect to 500 -- or rather

7    less than 500 grams of cocaine.

8          Please poll the jury on Mr. Tatum, and we'll publish

9    the verdict form.

10         *THE CLERK:*  Ms. Albonico, were those and are those

11   your verdicts?

12         *JUROR ALBONICO:*  Yes.

13         *THE CLERK:*  Mr. Rogers, were those and are those your

14   verdicts?

15         *JUROR ROGERS:*  Yes.

16         *THE CLERK:*  Ms. Misner, were those and are those your

17   verdicts?

18         *JUROR MISNER:*  Yes.

19         *THE CLERK:*  Mr. Bennett, were those and are those

20   your verdicts?

21         *JUROR BENNETT:*  Yes.

22         *THE CLERK:*  Ms. Gebauer, were those and are those

23   your verdicts?

24         *JUROR GEBAUER:*  Yes.

25         *THE CLERK:*  And Ms. Smith, were those and are those

your verdicts?

        *JUROR SMITH:*  Yes.

        *THE CLERK:*  And Mr. Colunga, were those and are those your verdicts?

        *JUROR COLUNGA:*  Yes.

        *THE CLERK:*  And Ms. Courtright, were those and are those your verdicts?

        *JUROR COURTRIGHT:*  Yes.

        *THE CLERK:*  And Ms. Martinez, were those and are those your verdicts?

        *JUROR MARTINEZ:*  Yes.

        *THE CLERK:*  And Ms. Bowles, were those and are those your verdicts?

        *JUROR BOWLES:*  Yes.

        *THE CLERK:*  And Mr. Wood, were those and are those your verdicts?

        *JUROR WOOD:*  Yes.

        *THE CLERK:*  And Ms. Parsell, were those and are those your verdicts?

        *JUROR PARSELL:*  Yes.

        *THE COURT:*  Moving to the case of the United States against Dante Howard, with respect to Count 1, conspiracy to distribute and possess with the intent to distribute controlled substances, the jury finds Mr. Howard guilty, does not find heroin involved but finds less than 500 grams of cocaine

1    involved and less than 50,000 grams or 50 kilograms of

2    marijuana.

3           Would you please poll the jury on the verdict

4    involving Mr. Howard.

5           THE CLERK:  Ms. Albonico, were those and are those

6    your verdicts?

7           JUROR ALBONICO:  Yes.

8           THE CLERK:  Mr. Rogers, were those and are those your

9    verdicts?

10          JUROR ROGERS:  Yes.

11          THE CLERK:  Ms. Misner, were those and are those your

12   verdicts?

13          JUROR MISNER:  Yes.

14          THE CLERK:  Mr. Bennett, were those and are those

15   your verdicts?

16          JUROR BENNETT:  Yes.

17          THE CLERK:  Ms. Gebauer, were those and are those

18   your verdicts?

19          JUROR GEBAUER:  Yes.

20          THE CLERK:  And Ms. Smith, were those and are those

21   your verdicts?

22          JUROR SMITH:  Yes.

23          THE CLERK:  And Mr. Colunga, were those and are those

24   your verdicts?

25          JUROR COLUNGA:  Yes.

1          THE CLERK:  And Ms. Courtright, were those and are
2   those your verdicts?
3          JUROR COURTRIGHT:  Yes.
4          THE CLERK:  And Ms. Martinez, were those and are
5   those your verdicts?
6          JUROR MARTINEZ:  Yes.
7          THE CLERK:  And Ms. Bowles, were those and are those
8   your verdicts?
9          JUROR BOWLES:  Yes.
10         THE CLERK:  And Mr. Wood, were those and are those
11  your verdicts?
12         JUROR WOOD:  Yes.
13         THE CLERK:  And Ms. Parsell, were those and are those
14  your verdicts?
15         JUROR PARSELL:  Yes.
16         THE COURT:  Thank you.
17         Turning to the case of the United States against
18  Erika Atkinson, with respect to Count 1, conspiracy to
19  distribute and possess with the intent to distribute controlled
20  substances, the jury finds Ms. Atkinson not guilty.
21         With respect to Count 11, possession with the intent
22  to distribute heroin on or about August 13, 2017, the jury
23  finds Ms. Atkinson guilty with less than 100 grams of heroin.
24         Would you please poll the jury with respect to
25  Ms. Atkinson.

1      THE CLERK:  Ms. Albonico, were those and are those

2  your verdicts?

3      JUROR ALBONICO:  Yes.

4      THE CLERK:  Mr. Rogers, were those and are those your

5  verdicts?

6      JUROR ROGERS:  Yes.

7      THE CLERK:  Ms. Misner, were those and are those your

8  verdicts?

9      JUROR MISNER:  Yes.

10     THE CLERK:  Mr. Bennett, were those and are those

11  your verdicts?

12     JUROR BENNETT:  Yes.

13     THE CLERK:  Ms. Gebauer, were those and are those

14  your verdicts?

15     JUROR GEBAUER:  Yes.

16     THE CLERK:  And Ms. Smith, were those and are those

17  your verdicts?

18     JUROR SMITH:  Yes.

19     THE CLERK:  And Mr. Colunga, were those and are those

20  your verdicts?

21     JUROR COLUNGA:  Yes.

22     THE CLERK:  And Ms. Courtright, were those and are

23  those your verdicts?

24     JUROR COURTRIGHT:  Yes.

25     THE CLERK:  And Ms. Martinez, were those and are

those your verdicts?

JUROR MARTINEZ: Yes.

THE CLERK: And Ms. Bowles, were those and are those your verdicts?

JUROR BOWLES: Yes.

THE CLERK: And Mr. Wood, were those and are those your verdicts?

JUROR WOOD: Yes.

THE CLERK: And Ms. Parsell, were those and are those your verdicts?

JUROR PARSELL: Yes.

THE COURT: And then with respect to the case of the United States against Max Avery, as to Count 1, conspiracy to distribute and possess with the intent to distribute controlled substances, the jury finds Mr. Avery not guilty.

With respect to Count 12, possession with the intent to distribute heroin on or about September 1, the jury finds Mr. Avery not guilty.

Would you please poll the jury with respect to Mr. Avery.

THE CLERK: Ms. Albonico, were those and are those your verdicts?

JUROR ALBONICO: Yes.

THE CLERK: Mr. Rogers, were those and are those your verdicts?

1          JUROR ROGERS:  Yes.

2          THE CLERK:  Ms. Misner, were those and are those your

3    verdicts?

4          JUROR MISNER:  Yes.

5          THE CLERK:  Mr. Bennett, were those and are those

6    your verdicts?

7          JUROR BENNETT:  Yes.

8          THE CLERK:  Ms. Gebauer, were those and are those

9    your verdicts?

10         JUROR GEBAUER:  Yes.

11         THE CLERK:  And Ms. Smith, were those and are those

12   your verdicts?

13         JUROR SMITH:  Yes.

14         THE CLERK:  And Mr. Colunga, were those and are those

15   your verdicts?

16         JUROR COLUNGA:  Yes.

17         THE CLERK:  And Ms. Courtright, were those and are

18   those your verdicts?

19         JUROR COURTRIGHT:  Yes.

20         THE CLERK:  And Ms. Martinez, were those and are

21   those your verdicts?

22         JUROR MARTINEZ:  Yes.

23         THE CLERK:  And Ms. Bowles, were those and are those

24   your verdicts?

25         JUROR BOWLES:  Yes.

1           THE CLERK:  And Mr. Wood, were those and are those

2    your verdicts?

3           JUROR WOOD:  Yes.

4           THE CLERK:  And Ms. Parsell, were those and are those

5    your verdicts?

6           JUROR PARSELL:  Yes.

7           THE COURT:  Turning to the case of the United States

8    against Andrea Thompson, with respect to Count 1, conspiracy to

9    distribute and possess with the intent to distribute controlled

10   substances, the jury finds Ms. Thompson guilty and does so with

11   respect to heroin as the controlled substance.

12          Would you please poll the jury and we'll publish that

13   verdict form.

14          THE CLERK:  Ms. Albonico, were those and are those

15   your verdicts?

16          JUROR ALBONICO:  Yes.

17          THE CLERK:  Mr. Rogers, were those and are those your

18   verdicts?

19          JUROR ROGERS:  Yes.

20          THE CLERK:  Ms. Misner, were those and are those your

21   verdicts?

22          JUROR MISNER:  Yes.

23          THE CLERK:  Mr. Bennett, were those and are those

24   your verdicts?

25          JUROR BENNETT:  Yes.

1          THE CLERK:  Ms. Gebauer, were those and are those

2     your verdicts?

3          JUROR GEBAUER:  Yes.

4          THE CLERK:  And Ms. Smith, were those and are those

5     your verdicts?

6          JUROR SMITH:  Yes.

7          THE CLERK:  And Mr. Colunga, were those and are those

8     your verdicts?

9          JUROR COLUNGA:  Yes.

10          THE CLERK:  And Ms. Courtright, were those and are

11     those your verdicts?

12          JUROR COURTRIGHT:  Yes.

13          THE CLERK:  And Ms. Martinez, were those and are

14     those your verdicts?

15          JUROR MARTINEZ:  Yes.

16          THE CLERK:  And Ms. Bowles, were those and are those

17     your verdicts?

18          JUROR BOWLES:  Yes.

19          THE CLERK:  And Mr. Wood, were those and are those

20     your verdicts?

21          JUROR WOOD:  Yes.

22          THE CLERK:  And Ms. Parsell, were those and are those

23     your verdicts?

24          JUROR PARSELL:  Yes.

25          THE COURT:  And turning to the case of the

United States against Aaron Cox, as to Count 1, conspiracy to distribute and possess with the intent to distribute controlled substances, the jury finds Mr. Cox not guilty.

With respect to Count 14, possession with the intent to distribute cocaine on or about September 2, 2017, the jury finds Mr. Cox not guilty.

Would you please poll the jury as to Mr. Cox and I'll publish the verdict form. Thank you.

THE CLERK: Ms. Albonico, were those and are those your verdicts?

JUROR ALBONICO: Yes.

THE CLERK: Mr. Rogers, were those and are those your verdicts?

JUROR ROGERS: Yes.

THE CLERK: Ms. Misner, were those and are those your verdicts?

JUROR MISNER: Yes.

THE CLERK: Mr. Bennett, were those and are those your verdicts?

JUROR BENNETT: Yes.

THE CLERK: Ms. Gebauer, were those and are those your verdicts?

JUROR GEBAUER: Yes.

THE CLERK: And Ms. Smith, were those and are those your verdicts?

1          JUROR SMITH:  Yes.

2          THE CLERK:  And Mr. Colunga, were those and are those

3   your verdicts?

4          JUROR COLUNGA:  Yes.

5          THE CLERK:  And Ms. Courtright, were those and are

6   those your verdicts?

7          JUROR COURTRIGHT:  Yes.

8          THE CLERK:  And Ms. Martinez, were those and are

9   those your verdicts?

10         JUROR MARTINEZ:  Yes.

11         THE CLERK:  And Ms. Bowles, were those and are those

12  your verdicts?

13         JUROR BOWLES:  Yes.

14         THE CLERK:  And Mr. Wood, were those and are those

15  your verdicts?

16         JUROR WOOD:  Yes.

17         THE CLERK:  And Ms. Parsell, were those and are those

18  your verdicts?

19         JUROR PARSELL:  Yes.

20         THE COURT:  All right.  Thank you.  That concludes

21  the recital of the verdicts, and that means that we're finished

22  with the case and we're at that point where obviously people at

23  different positions in the courtroom feel differently about the

24  way everything came out.  That's what we predicted would happen

25  at the beginning of the case, and that happens with every

1    decision that's made in court.

2          I always tell my family I make decisions all day and

3    every one I make aggravates at least somebody.  And now as

4    jurors, you share that burden of judgment with me.  You came

5    here a little over two weeks ago, stepped outside of what you

6    do day-to-day, willingly took on the mantle of juror, and I

7    thank you for that.  I thank you on behalf of the parties for

8    that, I thank you on behalf of the entire judiciary for that,

9    and the communities in which you all live.  Because I continue

10    to believe that what makes our system of criminal justice, and

11    more generally justice on the civil or criminal side, as

12    effective and as accepted as it is is the work of people like

13    you that ultimately weigh and decide these cases and reach a

14    judgment by unanimous consent based on all of the things that

15    you saw and heard here in court.  So I thank you for that.

16          I thank you for your attention and your work.  And

17    now I'm going to send you on your way because your job as

18    jurors is over.  I'm going to release you from that

19    responsibility.  I'm going to do the same thing with the

20    alternates who I know were in the back of the courtroom for the

21    verdict.

22          Your role is quite different as it turns out as

23    jurors.  You wound up not having that discharge, that ability

24    to negotiate and talk with your fellow jurors, and that's a

25    whole different kind of burden, but one that I thank you for

1    bearing.  Also critical and important to the system.  And all

2    of you, all 14 of you, are now free never to listen to me

3    again.  You can walk out of here and you don't have to listen

4    to me.

5           I hope before you leave if you have time you'll let

6    me greet you and thank you personally in the back.  And if you

7    don't, you can just get on your way.  You're free to go.

8    You're free to talk to anybody or nobody about your experience

9    here.  It's entirely up to you.  But all those instructions I

10   gave you about not talking to other people, they are done now.

11   You can talk to anybody or nobody as you wish.

12          And similarly, if you want to go out there and spend

13   a lot of time on the internet or whatever other source you have

14   finding out about the things that I didn't let you find out

15   about earlier, then go for it.  All of that is over and done.

16   Your service is finished.  And I thank you once again.  I hope

17   that I'll have a chance to thank you personally.  And that

18   includes the alternates if you have time before you go.  I have

19   a few more things to take care of here with the parties, but

20   I'm going to excuse you now with our thanks.

21          *(Jury exited the courtroom at 2:38 p.m.)*

22          *THE COURT:*  All right.  We have some bond decisions

23   to make, I think.  At least by my notes.  Mr. Nelson had been

24   detained, and given the jury's verdict of acquittal, I think he

25   would have to be discharged at this point.

1          Does the government know or do the marshals know if

2    there's any detainer or anything that would stand in the way of

3    releasing Mr. Nelson?

4          *MR. BAKER:*  Your Honor, I'm not aware of one.

5          *THE COURT:*  Okay.  The marshals are unaware.  So

6    Mr. Nelson will be discharged.  And I'm sure that you'll still

7    have to go through some processing to make sure that the

8    marshals sign you out, but they will do that.  But you should

9    be free to go and discharged.

10         I believe that there were several people on bond that

11   were convicted of at least one charge that would under 3142 and

12   3143 be a mandatory remand offense, so I'll talk about that in

13   a minute and give the parties affected a chance to address it.

14   And I believe that the other complete acquittal involved

15   Mr. Cox who is on bond; is that right?  Okay.

16         *MR. HILLS:*  On tether.

17         *THE COURT:*  So Mr. Cox would be discharged as well.

18   And, again, does the government know of any detainer involving

19   Mr. Cox?

20         *MR. BAKER:*  I'm not aware of one.

21         *THE COURT:*  Okay.  So, Mr. Cox, you'll be discharged

22   as well and discharged from the bond.

23         With respect to, first of all, Mr. Tatum, who is on

24   bond, is the government going to be recommending no sentence of

25   imprisonment?

1          MR. BAKER:  No, Your Honor.

2          THE COURT:  Okay.  So, Ms. Chartier, do you want to

3     be heard on what I would normally do, which is revoke bond at

4     this point?

5          MS. CHARTIER:  Thank you, Your Honor.  Mr. Tatum has

6     been on bond for approximately a year on a GPS tether.  He's

7     had no bond violations.  He's currently working on the weekend.

8     He cares for his elderly father who has dementia.  I would ask

9     the Court to allow Mr. Tatum to remain in his current situation

10    on tether under house arrest until sentencing.

11         THE COURT:  All right.  Well, the Court typically

12    applies 3142 and 3143 when there's been a conviction or an

13    adjudication of guilt, as there has been in this case, of a

14    qualifying offense, which includes a controlled substance

15    offense that carries the penalty ranges in play here.  The only

16    potential exceptions to that that are built into the statute

17    would involve the government recommending no sentence of

18    imprisonment or there being a substantial showing of something

19    likely to result in a reversal or order for new trial, which I

20    don't see at this point.

21         To the extent there's any power under 3145(c) for the

22    Court at the district level to apply the appellate standard,

23    and the Sixth Circuit suggested there may be, the showing would

24    have to be of exceptional reasons why the mandatory remand

25    shouldn't apply, and I don't think that there are exceptional

1    reasons articulated with respect to Mr. Tatum.

2            The circuit, although it has recognized in theory the

3    possibility of exceptional reasons, it hasn't actually found

4    any in practice, and so I'm going to go ahead and revoke the

5    bond under those provisions and detain Mr. Tatum.

6            In terms of Ms. Atkinson, I think she's next.  Do you

7    want to be heard?  Again, is the government going to be

8    recommending no sentence of imprisonment?

9            *MR. BAKER:*  No, Your Honor, the government will be

10   requesting a sentence of imprisonment.

11           *THE COURT:*  All right.  Then go ahead, Ms. Howard.

12           *MS. HOWARD:*  Thank you, Your Honor.  My client has

13   also been on a tether under house arrest for the past several

14   months.  She -- there was a notice of bond violation hearing

15   that just came through today regarding consumption of alcohol.

16   The probation officer did not recommend a revocation based on

17   that.

18           Based on the vote to convict, given that it's the

19   less serious charge, we would ask that Your Honor continue her

20   on her current bond.  She works full-time third shift.  She's

21   been seeing a drug counselor.  And other than the recent slipup

22   with the alcohol consumption, we think that she's done well on

23   bond, and we would ask that she be continued, Your Honor.

24           *THE COURT:*  All right.  With respect to Ms. Atkinson,

25   the same provisions, 3142 and 3143, would be in play, even with

respect to the charge on which she was convicted because it's

applied based on the maximum potential penalty not the minimum.

And, again, in the case of Ms. Atkinson I don't see anything

that would fall within the statutory exceptions under 3143, nor

do I see anything that would amount to exceptional reasons

under 3145(c), so I am going to revoke the bond for

Ms. Atkinson as well and detain her under those provisions.

     *MS. HOWARD:* Okay. Thank you, Your Honor.

     *THE COURT:* All right. I skipped over Mr. Avery last

time. I'm sorry about that. He's detained but was acquitted

on all of the charges.

     Does the government know of any detainer involving

Mr. Avery?

     *MR. BAKER:* I do not, Your Honor.

     *THE COURT:* Mr. Frawley?

     *MR. FRAWLEY:* I'm not aware of any.

     *THE COURT:* So, Mr. Avery, as in the case of Mr. Cox

and Mr. Nelson, you'll be discharged. And again you'll have to

go through the processing, but from the Court's point of view

you'd be discharged at this point.

     That takes us to Ms. Thompson and Mr. Turpel. Well,

let me ask the government first, will you be seeking no

sentence of imprisonment?

     *MR. BAKER:* We will, Your Honor -- we will be seeking

a sentence of detention, Your Honor.

1          THE COURT:  All right.  Go ahead, Mr. Turpel.

2          MR. TURPEL:  Your Honor, Ms. Thompson has been on

3   bond and cooperated with the probation office,

4   Pretrial Services, for almost 11 months.  It's my understanding

5   from her probation officer that if she could, she would

6   recommend that Ms. Thompson stay out.  She works.  I believe

7   she's at zero or one point on her prior record.  I'd ask the

8   Court to consider an exception in this matter.

9          THE COURT:  All right.  And I'm going to have the

10  same ruling with respect to Ms. Thompson.  I don't think

11  there's any statutory exception in play under 3143, and I don't

12  see exceptional circumstances or reasons under 3145(c), so I'm

13  going to apply the mandatory remand with respect to

14  Ms. Howard -- I'm sorry -- Ms. Thompson as well and revoke her

15  bond.

16          I think that takes care of all of the either

17  discharge or revocation decisions.  Am I missing anything from

18  any party's perspective on that?

19          MR. BAKER:  Not from the government's perspective,

20  Your Honor.

21          THE COURT:  Or any defendant's?

22          MR. FRAWLEY:  No, Your Honor.

23          THE COURT:  All right.  Is there anything else from

24  the parties' perspective that we need to take care of today?

25          MR. BAKER:  Not from the government.

1          THE COURT:  Or from any of the defendants'
2   perspectives?
3          MS. HOWARD:  No, Your Honor.
4          MS. CHARTIER:  No, Your Honor.
5          MR. LOMBARD:  Will the court issue a sentencing date
6   or will you set up one today?
7          THE COURT:  I'm sorry?
8          MR. LOMBARD:  Will the court issue a sentencing date
9   or will you set one?
10         THE COURT:  We will not set it right now, but we will
11  set it.  And I don't know how long out it will be.  Three or
12  four months probably.  And for any of the defendants who have a
13  conviction, we'll follow our normal presentence process which
14  will be a probation officer who generates a written
15  presentence report, gets it out to all counsel in advance.
16  Once the document goes through that, it comes back to me as a
17  final document.  That's the first time I'll see it.  And if you
18  have objections, obviously you'll raise them with your lawyers
19  and bring it to the sentencing hearing and I'll resolve it
20  there.
21         Okay.  Other questions or comments?  All right.
22  Again I want to thank the lawyers.  I know everybody leaves
23  with a mix of emotions.  Some worse than others.  But from a
24  perspective of the system working, I continue to believe that
25  all the lawyers sitting in all those chairs did an outstanding

job framing the issues for the parties -- or for the jurors

rather -- on behalf of their respective clients.  And although

I think I said this a day or two ago, I didn't really expect to

enjoy the process, but I have to say I did.  I thought that it

was an excellent piece of advocacy all around, and I appreciate

the opportunity to have been the presiding judge at such a

proceeding.

So with that, we will be in recess.  We'll record the

verdicts, obviously, as the jury determined them.

*THE CLERK:*  Court is in recess.

*(Proceeding concluded at 2:48 p.m.)*

\* \* \* \* \*

I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

I further certify that the transcript fees and format

comply with those prescribed by the court and the Judicial

Conference of the United States.


Date:  May 1, 2019


**/s/ Glenda Trexler**

Glenda Trexler, CSR-1436, RPR, CRR